UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 3:15-CR-00145-2 |
| | ) | |
| REYNALDO DELGADO GARZA, | ) | Judge Marvin E. Aspen |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Before us is Reynaldo Delgado Garza's ("Garza") motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) or for transfer to complete his sentence home confinement due to the COVID-19 pandemic. (Motion ("Mot.") (Dkt. No. 179).) For the following reasons, we deny Garza's motion for compassionate release and grant the government's related motion to file medical exhibits under seal. (*Id.*; (Motion to Seal (Dkt. No. 184—86).)

## BACKGROUND

We first contextualize Garza's motion. In February 2017, Garza pleaded guilty to the offense of Conspiracy to Possess with Intent to Distribute 5 Kilograms or More of Cocaine, 21 U.S.C. § 846, and was sentenced to a term of imprisonment of 120 months, five years supervised release, and a $100 special assessment. (Dkt. No. 174). Garza was admitted into the Bureau of Prisons' custody in March 2018. (Dkt. No. 183, Ex. 1). His current projected release date is July 15, 2026. *Id.* On June 9, 2020, Garza submitted a letter to us that we construed as a motion. (Dkt. Nos. 179, 180).

### i. The Bureau of Prison's COVID-19 Precautions

The Bureau of Prisons ("BOP") has significant measures to protect the health of the inmates in its charge amid the COVID-19 pandemic. BOP explained that "maintaining safety and security of [BOP] institutions is [BOP's] highest priority." BOP, Updates to BOP COVID-19 Action Plan: Inmate Movement (Mar. 19, 2020). Indeed, BOP has had a Pandemic Influenza Plan in place since 2012. BOP Health Services Division, Pandemic Influenza Plan-Module 1: Surveillance and Infection Control (Oct. 2012). BOP's protocol is lengthy and detailed. It establishes a multi-phase framework requiring BOP facilities begin preparations when there is first a "Suspected human outbreak overseas." *Id.* The plan addresses social distancing, hygienic and cleaning protocols, and the quarantining and treatment of symptomatic inmates. Consistent with that plan, BOP began planning for potential coronavirus transmissions in January, and then modified its operations pursuant to its Coronavirus (COVID-19) Action Plan ("Action Plan") on March 13, 2020 to minimize the transmission risk to its facilities. The government explains that the current modified operation plan requires all inmates in every BOP institution remain secured in their assigned cells/quarters to stop the spread to the fullest pragmatic extent possible. All staff and inmates have been and will continue to be issued face masks and strongly encouraged to wear an appropriate face covering when in public areas when social distancing cannot be achieved. And every newly admitted inmate is screened for COVID-19 exposure risk factors and symptoms. Asymptomatic inmates with exposure risk are placed in quarantine for a minimum of 14 days or until otherwise cleared by medical staff. Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are otherwise cleared by medical staff as meeting CDC criteria for release from isolation. More, in areas with sustained community transmission, all facility staff are screened for symptoms. Those staff with

temperatures of 100.4 degrees Fahrenheit or higher are barred from the facility on that basis alone, and those with a stuffy or runny nose can be placed on leave by a medical officer. As for further precautions, contractor access to BOP's facilities has been substantially restricted and social visits were stopped as of March 13, 2020 and remain suspended as of June 29, 2020. In lieu of social visits, BOP increased detainees' telephone allowance to 500 minutes per month. In addition, to relieve the strain on BOP facilities and assist the most vulnerable inmates, BOP was allotted greater authority to designate inmates for home confinement. On March 26, 2020, the Attorney General directed the BOP Director, upon considering the totality of the circumstances concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement. Memorandum for Director of Bureau of Prisons (March 26, 2020), https://www.justice.gov/file/1262731/download. That authority includes the ability to place an inmate in home confinement during the last six months or 10% of a sentence, whichever is shorter, see 18 U.S.C. § 3624(c)(2), and to move to home confinement those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g). And Congress enhanced BOP's ability to do so under the CARES Act that, in part, allows BOP to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" if the Attorney General finds that emergency conditions will materially affect the functioning of BOP. Pub. L. No. 116-136, §12003(b)(2), 134 Stat. 281, 516 (to be codified at 18 U.S.C. § 3621). As of June 29, 2020, BOP transferred 3,793 inmates to home confinement (a 133% increase) since

3

March 2020. We view these pandemic measures are designed to sharply mitigate COVID-19 transmission risks within BOP's institutions.

   ii.  *Garza's Purported Basis for Compassionate Release or Home Confinement*

As of June 18, 2020, Garza served 24.4% of his full sentence, and 28.7% of his projected sentence (including good-time credits). As of June 29, 2020, BOP's statistics show that that institution houses five COVID-19 positive inmates and one positive staff member. *See* https://www.bop.gov/coronavirus/index.jsp. The Warden timely responded to Garza's request for home confinement and explained that he was ineligible for home confinement because, among other reasons, he had yet to serve 50% of his sentence. (Ex. 2 (Dkt. No. 185).)

Garza's cited basis for his request is that he is a 47-year old who suffered a traumatic injury that led to multiple surgeries and skin grafts in the 1980s, had spinal fusion surgery, an appendectomy, and has heart disease with severe hypertension. (Mot. at 2.) Garza cites no evidence like medical exhibits in support of these claimed ailments. The government however attached medical records substantially devoid of these medical claims, particularly the claims that he has heart disease and *severe* hypertension. (Medical Records, Ex. 3 (Dkt. No. 186).)

## STANDARD OF LAW

The Sentencing Commission's policy statement on § 3582(c)(1)(A)'s sentence reductions provides that a Court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." USSG § 1B1.13."

# ANALYSIS

*i.     No Extraordinary and Compelling Reasons Warrant the Requested Reduction*

Garza critically misses the first part of the § 3553(a) test. We may only grant a sentence reduction if we first determine that "extraordinary and compelling reasons" justify the reduction and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.SC. § 3582(c)(1)(A)(i).  The Sentencing Commission's policy statement's definition of "extraordinary and compelling reasons" includes certain specified categories of medical conditions.  For example, that standard is met if the criminal defendant is suffering from a terminal illness. USSG § 1B1.13, cmt. n.1(A)(i).  Or if the criminal defendant is suffering from a serious physical or medical condition, a serious cognitive impairment, or deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. USSG § 1B1.13, cmt. n.1(A)(ii). Other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. USSG § 1B1.13, cmt. n.1(B)-(C).  Finally, the note recognizes that BOP could identify other grounds amount to "extraordinary and compelling reasons." USSG § 1B1.13, cmt. n.1(D).

Here, but for the pandemic, Garza would have no basis whatsoever for compassionate release.  Nor do the other medical records submitted before us suggest that Garza's medical conditions are such that would make him more vulnerable to the COVID-19 virus.  (*See* Medical Records (Dkt. No. 186).)  Indeed, his medical ailments are well-controlled according to his doctors and do not present any impediment to his ability to provide self-care in the institution. *Id.*

Thus, since the mere existence of COVID-19 in society and the possibility that it may

spread to a prison alone cannot independently justify compassionate release, *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020),[1] the only question for us is whether the risk of COVID-19 combined with Garza's health situation changes that assessment. The government acknowledges that if a defendant has a chronic condition that the CDC lists as heightening the risk of severe injury or death were the inmate to contract COVID-19, that that could present a "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," as stated in § 1B1.13, cmt. n. 1(A)(ii). The CDC lists such conditions to include moderate to severe asthma, chronic kidney disease treated with dialysis, chronic lung disease, diabetes, hemoglobin disorders, immunocompromised status, liver disease, serious heart conditions (including high blood pressure), and severe obesity. People at Increased Risk of Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last accessed July 29, 2020).

---

[1] *See e.g.*, *United States v. Eberhart*, No. 13-cr-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020)("a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A)."); *United States v. Coles*, No. 18-cr-20254, 2020 WL 1899562 (E.D. Mich. Apr. 17, 2020) (denied for 28-year-old inmate at institution with outbreak); *United States v. Okpala*, No. 17-cr-00533, 2020 WL 1864889 (E.D.N.Y. Apr. 14, 2020); *United States v. Weeks*, No. 16-cr-167, 2020 WL 1862634 (S.D.N.Y. Apr. 14, 2020); *United States v. Haney*, No. 19-cr-541, 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020) (denied for 61-year-old with no other conditions); *United States v. Pinto-Thomaz*, No. 18-cr-579, 2020 WL 1845875 (S.D.N.Y. Apr. 13, 2020) (two insider trading defendants with less than a year to serve have no risk factors); *United States v. Korn*, Nos. 15-cr-81S and 11-cr-384S, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020) ("in this Court's view, the mere possibility of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme."); *United States v. Carver*, No. 4:19-cr-06044, 2020 WL 1892340 (E.D. Wash. Apr. 8, 2020).

Garza postures that he has numerous medical conditions that we should consider. These include a traumatic injury from the 1980s, heart disease with severe hypertension (high blood pressure), moderate-severe aterial vascular disease in dyslipidemia, hypercholesterolemia Musculo (sic) skeletal disease with osteoarthritis, and an appendectomy. (Dkt. No. 179). But Garza's motion lacks any documentation whatsoever to support these assertions especially in the face of his vastly contradictory medical records. (Medical Records, Ex. 3). Thus for that reason, Garza's construed motion warrants denial.

Even if Garza's purported medical conditions did indeed exist, we would not find that they meet the threshold for serious physical or medical conditions to warrant the relief he seeks. His medical records were reviewed by medical staff who determined that his condition was not an incurable, progressive illness, or that Garza suffered a debilitating injury from which he is unlikely to recover. (*Id.*) In fact, the medical staff concluded that Garza is "quite stable with the current Medical Management/treatment plan." (*Id.* at 3.) In relevant part, the doctor who reviewed Garza's medical files noted that "Should he get exposed to/infected w COVID-19, he still might NOT have any Higher Risk of Morbidity/Mortality, compared to the other inmates with the same age group & similar Medical conditions." (*Id.*)

Courts have repeatedly denied motions for compassionate release in cases involving inmates with similar or more serious medical issues than Garza's. *See, e.g.*, *United States v. Peaks*, No. 16-cr-20460, 2020 WL 2214231 (E.D. Mich. May 7, 2020) (denying relief for inmate with BMI of 44 and hypertension); *United States v. Gold*, No. 15-cr-330, 2020 WL 2197839 (N.D. Ill. May 6, 2020) (denying relief for 65-year-old with pre-emphysema, hypertension, and high cholesterol); *United States v. Godofsky*, No. 5:16-cr-59, 2020 WL 2188047, at *2 (E.D. Ky. May 6, 2020) (denying relief for 63-year-old with hypertension, high cholesterol, and

asthma, and who is taking medications that weaken his immune system);*United States v. Fry*, No. 11-cr-141, 2020 WL1923218 (D. Minn. Apr. 21, 2020) (denying relief for 66-year-old who is obese and has heart disease and hypertension). We agree with those courts and follow suit. Thus, Garza has not shown the existence of any extraordinary and compelling reasons for a reduction in sentence as required by § 3582(c)(1) and § 1B1.13.

## CONCLUSION

Although COVID-19 is an extraordinary world event that understandably causes concern for all inmates, and particularly those with underlying health issues, Garza fails to show that the pandemic's impact on him and his health is an "extraordinary and compelling reason" that warrants his early release pursuant to 18 U.S.C. § 3582(c)(1)(A) or transfer to home confinement. His health issues are well-managed in custody, and he has not presented a release plan showing that his transfer to home confinement would meaningfully improve his health prospects.[2] Therefore, Garza's motion is denied and the government's motion to seal certain medical exhibits is granted. (Dkt. Nos. 179, 184). It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: July 30, 2020

---

[2] We additionally note that granting Garza's motion would be inconsistent with the other determinative factors. *See United States v. Kincaid*, No. 19-cr-6271, 2020 WL 2521303 at *1-2 (6th Cir. May 18, 2020) (holding that it is appropriate for district courts to consider the percentage of the overall sentence left to be served when addressing compassionate release motions). If Garza were released now, he would have served only about 24.4% of his 120-month sentence. And given the serious nature of Garza's criminal conduct, a significant change in sentence would not reflect the seriousness of the offense, promote respect for the law, provide just punishment, or afford adequate deterrence; it would also create unwarranted disparities among similarly situated defendants. *See* 18 U.S.C. § 3553(a)(2), (6).